Soriano et al., Demandantes y Apelantes, *v.* Rexach et al., Demandados y Apelados.

Apelación procedente de la Corte de Distrito de San Juan, Sección Primera, en causa sobre reivindicación y daños y perjuicios.

No. 1221.—Resuelto en marzo 9, 1916.

Hijos Naturales—Derechos en la Sucesión Intestada del Abuelo—Juicio de Abintestato.—Los hijos naturales cuyo padre es hijo legítimo no tienen derecho ninguno en la sucesión intestada del abuelo, ni facultad por tanto para promover el juicio de abintestato.

Id.—Leyes de Partidas—Código Civil Español—Derechos del Hijo Natural en la Herencia del Abuelo—Descendientes—Hijos Legítimos.—De acuerdo con las leyes que regían en el año 1875, con anterioridad a la adopción del Código Civil español, esto es, las Leyes de Partidas, los hijos naturales no pueden heredar ni por derecho propio ni por derecho de representación a su abuelo, padre legítimo de su padre natural. Los descendientes a que se hace referencia en la Ley III, Partida VI, que es el origen de los artículos 931 y 934 del Código Civil español, comprenden solamente los hijos legítimos.

Id. — Prueba del Carácter de Heredero — Declaratoria de Heredero — Mejor Prueba.—Cuando el demandante funda su acción en su calidad de heredero, sin que tal hecho hubiera sido admitido por el demandado, aquél puede justificar esa calidad en el juicio, sin necesidad de acudir para ello al procedimiento *ex parte* de declaratoria de heredero, y a menos que esté envuelto algún elemento que dependa del tiempo, de la memoria o de otra circunstancia excepcional, las declaraciones de los testigos en el juicio sobre los méritos de la cuestión, tienen más importancia intrínseca y verdadero valor probatorio y hasta constituye mejor prueba del hecho que la mera copia certificada de la orden en el procedimiento *ex parte* en que no ha habido intervención de la parte contraria, pero esa justificación sólo puede tener alcance y eficacia con relación al demandado en el caso concreto de que se trata.

Id.—Acción Reivindicatoria—Reivindicación—Título de Heredero—Partición y Adjudicación de la Herencia.—El título de heredero trasmite un derecho sobre el conjunto de los bienes de la herencia y por virtud de él todos los herederos, por el hecho de la muerte de su causante, llegan a ser dueños en común, y pueden todos en conjunto entablar una acción reivindicatoria sin necesidad de que se practiquen previamente las diligencias de partición y adjudicación. Pero mientras no se practican estas diligencias, ninguno de los herederos puede decirse ni ser considerado separadamente como dueño único y exclusivo de una porción determinada o parte alícuota y por tanto el título de heredero por sí sólo no es suficiente para que uno solo o algunos de ellos pueda ejercitar con éxito aquella acción.

Los hechos están expresados en la opinión.

Abogados de los apelantes:—*Sres. Herminio Díaz Navarro, Henry G. Molina y Luis Samalea Iglesias.*

Abogados de los apelados: *Sres. Bosch* y *Soto.*

El Juez Asociado Sr. Hutchison, emitió la opinión del tribunal.

Las razones en las cuales fundó la corte inferior su sentencia están consignadas por escrito en una opinión que es como sigue:

"El caso sometido a la resolución de esta corte, consiste en una demanda jurada sobre acción reivindicatoria de propiedad real e indemnización de daños y perjuicios, interpuesta por Isaac Soriano, Rita, Visitación y Jovito Soriano y Clemente contra José Rexach y la Sucesión de Pablo Ubarri Iramategui, solicitando tal reivindicación y condena de veinte mil dollars de daños y perjuicios, bajo las siguientes alegaciones:

"(*a*) Que Juan Evangelista Soriano era dueño de un inmueble de 200 cuerdas radicado en el Seboruco de Santurce, y que habiendo fallecido en 1875, dicho Juan Evangelista Soriano, herederon la propiedad de dicho inmueble los demandantes.

"(*b*) Que desde el año 1875 hasta el 1885 Isaac Soriano venía en posesión real y no interrumpida de dicho inmueble, del que fueron segregadas y vendidas en dicho año 1885, 72 cuerdas y 4,800 varas cuadradas que fueron vendidas a Pablo Ubarri Capetillo.

"(*c*) Que Isaac Soriano permaneció en posesión de las remanentes 128 cuerdas, en la forma que se describen en la demanda, y que en el año 1901, Pablo Ubarri Iramategui, comprador de Pablo Ubarri y Capetillo, de fincas que colindaban al sud y este con las 128 cuerdas, desalojó a Isaac Soriano de dichas tierras y las poseyó sin título legal alguno en perjuicio, y contra la voluntad de los demandantes.

"(*d*) Que en 1905 Ubarri Iramategui traspasó dicha propiedad a José Rexach Dueño, quien las posee sin título legal contra la voluntad de los demandantes.

"(*e*) Que Pablo Ubarri y José Rexach han causado a los demandantes perjuicios por diez mil dollars cada uno de ellos.

"La parte demandada sucesión de Pablo Ubarri Iramategui por sí, y como citada de evicción por José Rexach Dueño contestó tal demanda con su contestación jurada, solicitando la desestimación de la demanda en todos sus extremos, bajo las siguientes alegaciones:

"(*f*) Que por carencia de información negaba las alegaciones alusivas a haber sido dueño Juan Evangelista Soriano de inmueble alguno de 200 cuerdas.

"(*g*) Que no es cierto que en 1885 se efectuara segregación alguna

de un predio de 72 cuerdas 4,890 varas cuadradas, pues tal predio que pertenecía a la sucesión de Juan Evangelista Soriano le fué embargado y vendido en subasta pública, habiéndose adjudicado a Pablo Ubarri Capetillo.

"(*h*) Que no es cierto que Pablo Ubarri Iramategui se apropiase fraudulentamente las 128 cuerdas ni las vendiese a Rexach, pues lo ocurrido fué que Pablo Ubarri Iramategui adquirió de Pablo Ubarri Capetillo, bastantes años antes de 1901 las tierras a que el pleito se refiere, habiéndolas poseído quieta y pacíficamente ambos Ubarri, y que tales tierras no eran de Isaac Soriano.

"(*i*) Que no es cierto que Pablo Ubarri Iramategui vendiese a Rexach 128 cuerdas de terreno en el Seboruco, pues la venta fué de 200 cuerdas y 72 cuerdas 4,890 varas cuadradas, que tenía Pablo Ubarri Capetillo inscritas en el registro de la propiedad, desde el año 1884 las 200 cuerdas, y desde el año 1889 las 72 cuerdas 4,890 varas cuadradas.

"(*j*) Que negaban los hechos referentes a la indemnización de daños y perjuicios.

"(*k*) Que en el año de 1904 Isaac Soriano promovió un pleito contra Pablo Ubarri Iramategui estableciendo la misma acción de la demanda hoy interpuesta, en el que recayó en 6 de enero de 1905 una sentencia por la que la corte resolvió 'que los hechos y la ley estaban en favor del demandado, y en tal virtud dictaba sentencia a su favor, declarando que el demandante nada debe recobrar del demandado, con las costas al demandante;' que la acción de dicho pleito era de igual naturaleza que la actual, siendo objeto de litigio la misma finca que ahora se reclama y por igual causa que la alegada en este pleito, y entre aquel demandante y los actuales reclamantes existe la más perfecta solidaridad, derivando el uno y los otros su pretensión en la finca mencionada, de su calidad de herederos de su abuelo Juan Evangelista Soriano.

"La parte demandante presentó como prueba la partida de nacimiento de Isaac Soriano, de la cual aparece que es hijo natural de María Exaltación Soriano, la partida de defunción de Juan Evangelista Soriano, un plano levantado en 1889 por el ingeniero Fernando López Tuero, una certificación del plano expresado, suscrita por el mismo ingeniero, y el testimonio de varios testigos. De este plano y certificación aparece que la parcela 'A,' consiste en un predio de 72 cuerdas 4,890 varas cuadradas en el sitio del Seboruco de Santurce; y que en el propio sitio había una parcela de 128 cuerdas que según la certificación expresada, correspondía al Estado en dicho año de 1889.

"Descartando la prueba testifical, que examinaremos más adelante para ver si ella por sí sola basta a la justificación del dominio adquirido por prescripción, se ve claramente que los demandantes no han justificado el dominio de la parcela reclamada ni a favor del presunto causante Juan Evangelista Soriano ni de sus pretendidos causahabientes, promovedores de la presente acción.

"Aparte de estas deficiencias en la prueba, que resulta a todas luces insuficiente, Isaac Soriano no ha justificado su carácter de heredero de Juan Evangelista Soriano, padre legítimo de María Exaltación Soriano y abuelo natural del referido demandante. Rita, Visitación y Jovito Soriano, declararon que son hijos legítimos de José Benito Soriano, hijo de Juan Evangelista; pero no presentaron ninguna prueba documental para justificar su carácter de herederos ni siquiera trataron de demostrar que Juan Evangelista Soriano muriera sin otorgar testamento. Aun cuando los demandantes hubiesen demostrado cumplidamente su carácter de herederos, y aun cuando se hubiese probado el dominio del terreno que se reclama a favor de Juan Evanglista Soriano, siempre la prueba hubiese resultado insuficiente, porque no sabemos si hubo o no una liquidación del caudal del mencionado causante, si se hicieron las correspondientes adjudicaciones, luego de haber sido satisfechas las deudas, en caso de que hubiesen quedado algunos bienes hereditarios, y si el inmueble en litigio formó parte de estos bienes, haciéndose a los demandantes la adjudicación del mismo. Entendemos que estos requisitos son indispensables para el buen éxito de la acción reivindicatoria, cuando el dominio del inmueble se basa en un título hereditario. Es evidente, pues, que la alegación de la demanda en que se dice que Juan Evangelista Soriano fué dueño del inmueble reclamado hasta el momento de su muerte en que pasó la propiedad a los promovedores de esta acción, no ha sido satisfactoriamente probada. Los demandantes pudieron haber alegado el dominio en términos generales; pero desde el momento en que manifiestan haberlo adquirido por título de herencia, están obligados a probar única y exclusivamente los hechos alegados, pues la demostración del dominio por cualquier otro medio de adquisición hubiese puesto de relieve una incongruencia entre las alegaciones y la prueba. *Eagan* v. *Delanoy,* 16 Cal. 85.

"Los demandantes alegan también que Isaac Soriano tuvo la posesión real y no interrumpida del inmueble en litigio desde 1875 hasta 1901 en que fué desalojado del mismo por Pablo Ubarri Iramategui; pero, a juicio nuestro, esta posesión, en la forma en que aparece alegada, no constituye una alegación de dominio adquirido por prescripción. La adquisición del dominio por una persona que estuvo

en posesión de la cosa por un período igual o mayor al que se señala en la ley, implica necesariamente la pérdida de ese dominio por el verdadero dueño. Lo que es adquisitivo para uno tiene que ser extintivo para otro, y es claro y evidente que si una persona posee un inmueble que, según sus alegaciones no perteneció a ningún otro dueño, sino que lo adquirió por título hereditario, para prosperar en su reclamación está obligada a justificar su título en la forma alegada, pues únicamente la posesión adversa puede servir de base para la justificación del dominio, por el transcurso del tiempo, de modo que una vez alegada y probada aparezca satisfactoriamente ante el tribunal, de un lado el derecho adquirido y de otro el derecho extinguido o muerto. La alegación de que las 128 cuerdas de terreno reclamadas fueron adquiridas por título de herencia, coloca a los demandantes en una posición de la cual no pueden desviarse, para alegar la posesión adversa, porque si fueron ellos los únicos dueños del inmueble ¿cómo van a alegar la prescripción contra ellos mismos?

"Esta prescripción, en todo caso, tendría que ser la extraordinaria, porque los actores no han justificado título alguno a su favor. Examinemos la prueba testifical para ver si los demandantes han probado o no la posesión alegada por un período que exceda de treinta años. Los testigos presentados por dichos demandantes declaran que vieron a Isaac Soriano viviendo en la finca, durante un largo período de tiempo; algunos de ellos dicen que poseyó en concepto de dueño, pero ninguno manifiesta que esta posesión fuese pública, pacífica y sin interrupción. Consideramos la prueba aportada sobre la posesión del inmueble sumamente débil. Para justificar el dominio adquirido por medio de la prescripción es necesario que la posesión con todos los requisitos que la ley exige quede demostrada por una prueba robusta y competente que satisfaga el ánimo del juzgador. La acción reivindicatoria ha de tener muy sólido fundamento para que pueda prosperar; ha de cimentarse sobre evidencias muy resistentes y claras, pues el demandante debe fundar su acción en la virtualidad y eficacia de su propio título y no en la debilidad o flaqueza del de la parte contraria. El actor es quien tiene el peso de la prueba, y si basa su acción en la adquisición del dominio por prescripción, está obligado a probar esta prescripción con todos los requisitos que la ley exige, y sabido es que el Código Civil y la jurisprudencia requieren la posesión exclusiva en concepto de dueño, de una manera pública, pacífica y no interrumpida. El demandado no está obligado a llenar las lagunas que puedan advertirse en la prueba del demandante. Cualquiera de los requisitos señalados es esencial para el

buen éxito de.la acción, y si se deja de demostrar uno solo de ellos, no es posible que la misma pueda prosperar.

''La Corte Suprema de España ha decidido en sentencia de 22 de mayo de 1896, que la posesión exclusiva en concepto de dueño es uno de los requisitos esenciales para la prescripción.

''Cuando la posesión adversa es especialmente alegada, la parte que base en ella la reclamación, debe hacer constar que ésta posesión es real, abierta, notoria, exclusiva, continuada sin interrupción, por el período determinado en la ley, hostil o adversa, o bajo una alegación de derecho o título por dicha parte en posesión. 1 Cyc. 1141–1142.

''La parte que alega la posesión adversa tiene el peso de la prueba; está obligada a demostrar todos los elementos necesarios para constituir un título de dominio por prescripción; y si deja de probar uno de estos requisitos, la corte debe declarar que la prueba es insuficiente para sostener la acción. El demandante tiene el deber de probar que la posesión es real, abierta, notoria, continuada, por todo . el período determinado en la ley,. exclusiva y hostil. 1 Cyc. 1143–1144.

''Como se ve, la jurisprudencia americana está perfectamente de acuerdo con las disposiciones de nuestro Código Civil.

''Sentadas estas conclusiones, creemos innecesario detenernos a examinar la prueba para ver si se ha demostrado o no de una manera satisfactoria la identidad del inmueble reclamado.

''Por las razones expuestas, se declara sin lugar la demanda con imposición de costas a los demandantes. El secretario registrará una sentencia en debida forma.

''San Juan, P. R., abril 11, 1914.

''(Firmado)    FÉLIX CÓRDOVA DÁVILA,
*Juez de Distrito, Sección Primera.*''

Siete son los errores que han sido alegados, a saber:

1. La corte erró al llegar a la conclusión de que Isaac Soriano no justificó su carácter de heredero de Juan Evangelista Soriano.

2. La corte erró al llegar a la conclusión de que no fué probado el hecho de que Juan Evangelista Soriano fué dueño del inmueble reclamado hasta el momento de su muerte.

3. La corte erró al llegar a la conclusión de que no se probara que la posesión, en este caso, fué pública, pacífica y

sin interrupción, porque ninguno de los testigos hiciera textualmente estas manifestaciones.

4. La corte erró al llegar a la conclusión de que la parte demandante no demostró todos los elementos necesarios para constituir un título de dominio por prescripción en este caso.

5. La corte erró al entender que son requisitos indispensables para el buen éxito de una acción reivindicatoria, cuando el dominio del inmueble se basa en un título hereditario, al justificarse el carácter de heredero del causante, si hubo o no liquidación del caudal hereditario, si se hicieron las correspondientes adjudicaciones, si se satisficieron o no las deudas, si el inmueble en litigio forma parte de estos bienes y si se hizo la adjudicación del mismo a los demandantes.

6. La corte erró al entender que la posesión real y no interrumpida que Isaac Soriano tuvo del inmueble en litigio desde 1875 a 1901 en que fué desalojado del mismo por Pablo Ubarri, no constituye una delegación de dominio adquirido por prescripción.

7. La corte erró al declarar sin lugar la demanda.

En lo que respecta al primero de los errores alegados, la prueba demuestra que Juan Evangelista Soriano falleció en el año 1875, o sea unos diez años despúes de la muerte de su hija María Exaltación, madre de Isaac, hijo natural de ésta, y que él dejó un hijo legítimo, José Benito, padre de María Rita, Visitación y Jovito Soriano, que son los demandantes en esta acción. Isaac, por tanto, no es un heredero forzoso de su abuelo. "Los hijos naturales cuyo padre es hijo legítimo, no tienen derecho ninguno en la sucesión intestada del abuelo, ni facultades, por tanto, para promover el juicio de abintestato." Sentencia del Tribunal Supremo de España de 13 de febrero de 1903. Pero habiendo muerto Juan Evangelista en el año 1875, con anterioridad a la adopción del Código Civil Español, debemos recurrir a las partidas por ser la ley que entonces regía y parece que los descendientes a que se hace referencia en la Ley III, partida 6ª., que es el origen de los artículos 931 y 934 del

Código Civil Español comprenden solamente "a los hijos legítimos, y que los hijos naturales no pueden heredar ni por derecho propio ni por derecho de representación a su abuelo, padre legítimo de su padre natural." 7 Manresa, pág. 86.

La cuestión no es nueva (*res nova*) en este tribunal, pues fué discutida extensamente y claramente resuelta en el caso de *Correa et al.* v. *Correa et al.,* 18 D. P. R. 117, en el que se resolvió lo siguiente, según la cita que hacemos del sumario de dicho caso, a saber:

"De acuerdo con la legislación vigente el 13 de agosto de 1879, el hijo natural reconocido no tiene derecho a heredar, en representación de su padre natural, al padre legítimo de su padre natural y, por lo tanto, el padre de las demandantes en este caso no era heredero forzoso del causante de la sucesión demandada, y las demandantes carecen de acción para pedir la nulidad del testamento impugnado en la demanda.

"De acuerdo con las disposiciones del Código Civil Español vigente en Puerto Rico en 1890, el hijo natural reconocido tampoco tiene derecho a heredar, en representación de su padre natural, al padre legítimo de su padre natural."

Para sostener el segundo señalamiento de error los apelantes se basan enteramente en su prueba testifical y de todo el volumen de declaraciones han recogido y agrupado en un solo párrafo como demostración concluyente de que el título lo tenía su abuelo, los fragmentos siguientes:

"Isaac Soriano dice que vivía en la finca de 128 cuerdas pertenecientes a su abuelo Juan Evangelista Soriano (pág. 24 transcp.); Escolástico Soriano apunta que nació y vivió largo tiempo en el Seboruco en la finca de su padre, describiéndola (pág. 25 transcp.); Rita Soriano declara que nació en el Seboruco en la finca de su abuelito, describiéndola, que nació en esa finca que era de su abuelito, que era pequeña cuando salió de allí, hace más de 30 años, quedándose, a la muerte de su abuelito, poseyendo esa finca Isaac Soriano (pág. 27 transcp.); Juan París Calderón expone 'que conoce a Isaac Soriano y la finca que éste vivía y que era de su abuelo' (pág. 27 transcp.), y describiéndola vuelve a decir 'siendo dueño el padre de Isaac Soriano,' y 'que Isaac Soriano vivía en la finca y antes de

éste su abuelo Juan Evangelista Soriano, a quien conoció como dueño de la finca desde el año 50', y, 'que Juan Evangelista Soriano vivió en esa finca hasta su muerte, y después su nieto Isaac Soriano'; José Tanco dice que en esa finca—describiéndola—vivían Juan Evangelista e Isaac Soriano en concepto de dueños y así lo dice porque conoció a Juan Evangelista en esa propiedad desde la edad de 14 o 15 años; que después de muerto Juan Evangelista, vivió esa propiedad Isaac Soriano (pág. 29 transcp.); Ignacio Galíndez declara que era dueño de esa finca Juan Evangelista Soriano y luego quedó su nieto hasta ahora.''

No solamente pierden estas manifestaciones vagas y aisladas mucha de la poca fuerza persuasiva que tienen al ser consideradas como aparecen en forma narrativa en los autos, en relación con el contenido y a la luz de otras manifestaciones de los testigos y de la tendencia general y efecto de todas las declaraciones, sino que fueron consideradas en la corte inferior según salían de labios de los testigos en la silla testifical, y no parecen haber inspirado ninguna gran confianza en la mente del juez sentenciador. El discutirlas en toda su extensión en relación con toda la prueba documental que consta en los autos, gran parte de la cual no se menciona en absoluto por el juez sentenciador en su opinión, no sería más que una pérdida de tiempo y energía.

Para los fines de esta opinión, podemos aceptar la alegación que formulan los apelantes al discutir el tercer señalamiento de error, o sea, que los testigos no tienen que expresar necesariamente con una fraseología técnica legal, la naturaleza de la posesión sobre la cual declaran, pero en cuanto a esto, tenemos que convenir asimismo con la corte *a quo* en un sentido general, tanto en lo que respecta al carácter de la posesión que ha de probarse cuando en ella se funda el demandante en una acción reivindicatoria para establecer un título por prescripción, como en lo que se refiere a la omisión por parte de los demandantes en esta acción en establecer la debida constancia. Cualquier explicación satisfactoria de las razones que tenemos para la conclusión a que hemos llegado acerca de este aspecto del caso haría necesa-

ria, una relación completa y un análisis de toda la prueba, y extendería esta opinión más allá de todo límite razonable. Será bastante con que digamos que hemos examinado los autos cuidadosamente; que cualquier duda que pudiera surgir de la prueba aducida por los demandantes respecto a la posibilidad de algún error en este sentido ha desaparecido por completo por virtud de la prueba documental, y que estamos enteramente de acuerdo con la conclusión a que llegó la corte sentenciadora.

La cuestión promovida en el cuarto señalamiento de error ha quedado resuelta sustancialmente por los razonamientos que ya hemos expresado. Todo lo demás que se diga no vendría a ser más que una mera discusión académica de principios abstractos.

Las conclusiones a que se ha llegado sobre las cuestiones ya discutidas resuelven asimismo todo el caso sin tener en cuenta los méritos de la proposición contenida en los señalamientos restantes.

Sin embargo, para evitar cualquier mal entendimiento posible, debemos decir que la cuestión planteada en el quinto señalamiento está bien fundada, y si la resolución de la corte inferior hubiera dependido de la cuestión que así fué promovida, hubiera sido necesaria la revocación. Además, la aplicación hecha por el juez sentenciador de la teoría enunciada en la opinión citada anteriormente a los hechos de este caso, justifica, al parecer, que brevemente repitamos ahora lo que hasta aquí este tribunal ha establecido en más de una ocasión como verdadera doctrina en un caso como el presente.

En el caso de *Morales et al.* v. *Landrau et al*, 15 D. P. R. 782, y en las páginas 796, 797, este tribunal, por conducto del Juez Presidente Sr. Hernández, se expresó como sigue:

"Además, si con arreglo al artículo 665 del Código Civil, los derechos a la sucesión de una persona se trasmiten desde el momento de su muerte, y, según el artículo 669 del mismo código, los herederos suceden al difunto por el hecho solo de su muerte en todos

sus derechos y obligaciones, es lógico deducir que para la justifica-
ción del derecho sucesorio alegado en la demanda con relación a
Petrona y Dolores Morales Oquendo han podido venir al juicio las
actas de defunción de las mismas.

"Habiendo fundado los demandantes su acción entre otros hechos
en su calidad de herederos de Angel Oquendo sin que tal hecho hubiera
sido admitido por los demandados, aquéllos han podido justificar esa
calidad en el presente juicio sin necesidad de acudir para ello a la
Ley de Procedimientos Legales Especiales, si bien esa justificación
sólo puede tener alcance y eficacia con relación a los demandados
en el caso concreto de que se trata, pues para fines generales, o cuando
se trate de obtener declaratoria de herederos, que en este juicio no
ha sido solicitada, debe acudirse al capítulo 3º. del título 1º. de la
Ley de Procedimientos Legales Especiales que establece el modo y
forma de obtener aquella declaratoria."

Y por vía de suplemento al último párrafo citado debe-
mos agregar que, a menos que esté envuelto algún elemento
que dependa del tiempo y de la memoria, u otra circunstan-
cia excepcional, no parece existir una verdadera razón por
la cual la prueba documental que ha sido presentada, exa-
minada y considerada por el abogado de la parte contraria
antes de ser admitida, y las declaraciones prestadas por los
testigos en el juicio sobre los méritos en cuanto a los inte-
reses contrarios de las partes contendientes que han sido
sometidas a una severa observación judicial, hecha más in-
tensa por la lucha entre los litigantes y sujetas a la fuerte
prueba de un examen de repreguntas, no deban ser consi-
deradas como que tienen más importancia intrínsica y ver-
dadero valor probatorio, y, por tanto, que hasta constituye
una prueba mejor del hecho que trata de establecerse, que
la mera copia certificada de una orden que ha sido regis-
trada en un procedimiento *ex parte,* sobre declaratoria de
herederos, en el que no hay la misma oposición a la admi-
sión de documentos y solamente son examinadas por su abo-
gado o por la corte, las partes interesadas en establecer
el hecho, y sus testigos, sin ninguna intervención de parte
contraria.

Y volviendo a la cuestión más fundamental, en el caso de *Velilla* v. *Pizá,* 17 D. P. R. 1112, que es un caso típico en que se aplica debidamente a los hechos .envueltos en dicho caso la doctrina enunciada por el juez sentenciador en la opinión emitida en este caso, *supra,* la verdadera diferencia que existe entre dicho caso y uno como el presente ha sido cuidadosamente establecida por el Juez Asociado Sr. Aldrey, que emitió la opinión del tribunal, en la forma siguiente:

"Es cierto que los artículos 657 y 661 del anterior Código Civil concordantes con los 665 y 669 del vigente, establecen que los derechos a la sucesión de una persona se transmiten desde el momento de su muerte y que los herederos suceden al difunto por el solo hecho de su muerte en todos sus derechos y obligaciones, y de acuerdo con esos artículos, el heredero o los herederos, si hubiere más de uno, en su totalidad adquieren el derecho dominical del causante.

"El título de heredero transmite un derecho sobre el conjunto de los bienes hereditarios; por virtud de él todos los herederos por el hecho de la muerte de su causante, llegan a ser dueños en común, pero mientras no se practiquen las diligencias de partición y adjudicación, mientras en virtud de ella no cese esa comunidad, ninguno puede decirse ni ser considerado como dueño único y exclusivo de una porción determinada o parte alícuota, fija y concreta de los bienes de la herencia, cuyo concepto es requisito que debe justificarse para que pueda prosperar una acción reivindicatoria.

"Tales artículos confieren un derecho sobre todos y cada uno de los bienes hereditarios, pero no un derecho concreto en determinados bienes, lo que sólo se obtiene por la adjudicación hecha legalmente en las operaciones particionales.

    ✻    ✻    ✻    ✻    ✻    ✻    ✻

"Ocurrida la muerte del causahabiente, existe en sus herederos, según los artículos citados, un dominio en el todo indeterminado, que se concreta y determina mediante la partición. y adjudicación de los bienes hereditarios, la que según el artículo 1035 del Código Civil vigente, concordante con el 1068 del código anterior, es la que confiere propiedad exclusiva a un heredero sobre los bienes que le hayan sido adjudicados.

"Es cierto que, en la sentencia del Tribunal Supremo de España de 20 de mayo de 1899 se declaró que 'a partir del hecho de que al

fallecimiento de una persona tenía por título traslativo inscrito en el registro el dominio pleno sobre un inmueble, es indiscutible que desde el momento de ocurrir su muerte lo adquirieron sus hijos por sucesión directa, y la declaración de herederos abintestato inscrita a su favor en el registro, constituye un título de dominio bastante para ejercitar la acción reivindicatoria, mientras otro mejor no la obste.'

"Mas, en ese caso, la finca figuraba inscrita en pleno dominio a nombre del causante, la reclamación la hicieron todos sus herederos y habían inscrito la finca a su nombre mediante la presentación de su declaratoria de herederos, ninguno de cuyos requisitos se ha dado en el presente caso. Allí reclamaban todos los herederos en beneficio de la comunidad y aquí un heredero reclama la mitad de una finca como suya exclusivamente.

"La doctrina que exponemos está apoyada por las sentencias del Tribunal Supremo de España de 9 de enero de 1866; 17 de enero de 1872; 17 de diciembre 1873; 20 de abril de 1874; 29 de enero de 1884."

La regla general aplicable al presente caso ha sido también clara y correctamente expresada, habiéndose referido especialmente a ella el Juez Asociado Sr. Wolf, en su opinión concurrente, emitida en el caso de Velilla, a saber:

"Mi principal razón para presentar separadamente una opinión concurrente, es la de que, a mi juicio, el verdadero principio no queda suficientemente afirmado en la opinión de la corte, sino que más bien se establece como por vía de excepción. Yo entiendo que el principio es, y ha sido desde los tiempos de Roma, que los herederos del difunto le suceden en todos sus derechos y títulos, y que ellos pueden sostener pleito para recobrar toda propiedad perteneciente a la herencia del difunto, o cualquiera parte de ella que sea detenida de adverso contra ellos. La excepción es cuando hay más de un heredero que ningún heredero por sí solo pueda promover un litigio para recobrar una propiedad determinada, hasta que él sea declarado el sólo y exclusivo dueño de tal propiedad.

"Todos los herederos pueden promover tal pleito, y aun podría uno de ellos, en representación de los demás, hacerlo así, bajo ciertas restricciones. Es casi un ejemplo del antiguo lema: 'Unidos nos sostenemos; divididos, caemos.'

"Convengo enteramente en la opinión de la mayoría, en cuanto a que toma por base para la confirmación de la sentencia el principio

de que habiendo varios herederos, no puede uno solo de ellos, por sí, promover un pleito acerca de determinada propiedad de la herencia, a menos que haya precedido una partición y división de la herencia. Pero no estoy conforme con aquellos otros puntos de la opinión, que parecen dar a entender que un título tal que facultaría a todos los herederos a promover un pleito de reivindicación, no es completo desde el momento en que falleció el causante de la herencia.

"Al tratar de la sentencia de la Corte Suprema de España de fecha 20 de mayo de 1899, la opinión de la mayoría, si no se explicara, o si no se separara de su contexto, parecería indicar que el registro de la declaratoria de herederos, en el correspondiente registro de la propiedad pudiera conferir a los herederos algún mayor derecho. Yo no creo que la totalidad de la opinión se incline a ese principio, pero pudiera extraerse esa inferencia de las palabras empleadas por la corte al comparar el caso de aquella sentencia en el presente caso. A más de esto, la cita de la sentencia del Tribunal Supremo de España de fecha 13 de junio de 1901, por sí sola, no creo que establece claramente la doctrina legal. Todos los herederos pueden unirse para promover y sostener un litigio con respecto a propiedad determinada, que se retenga por alguien en adverso, y de la que ellos son los verdaderos dueños."

*Velilla* v. *Pizá,* 17 D. P. R. 1112.

La misma regla general fué aplicada en el caso de *Sucesión de Collado* v. *Pérez et al.,* 19 D. P. R. 928, a hechos algo más semejantes a los que fueron alegados en el caso que ahora consideramos. Aunque una gran mayoría de dichos casos como han surgido en la práctica ordinaria al parecer sirven para aclarar la excepción más bien que la regla, no hay razón, sin embargo, para que exista ninguna confusión en cuanto al principio fundamental envuelto y por lo general no puede haber dificultad alguna en distinguir los casos considerando los hechos. No creemos necesario, por tanto, poner más ejemplos ni agregar nada más a lo que hasta aquí hemos dicho sobre la misma materia.

Sin embargo, según hemos indicado, ésta no fué la cuestión fundamental en la corte inferior y no hay razón para creer que otro sería el resultado si se ordenara un nuevo

juicio sobre los méritos.    El error, por· tanto, no es perjudicial y debe confirmarse la sentencia.

*Confirmada la sentencia apelada*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, del Toro y Aldrey.